PETER & BURGHARD STONE COMPANY v. CARPER.

[No. 13,541. Filed July 3, 1930. Rehearing denied November 19, 1930. Transfer dismissed April 28, 1933.]

*Fenton, Steers, Beasley & Klee,* for appellant.

*Merle N. A. Walker* and *Walker & Hollett,* for appellee.

*Charles A. Lowe,* amicus curiae.

McMahan, J.—Henry W. Klausman had a contract for the construction of a bank building at Marion. William M. Carper was one of the sureties on his bond which was conditioned for the faithful performance of the contract, including the payment for all material and labor charges incurred in the construction of such building. Appellant, under a written contract with Klausman, furnished the material and the necessary labor to construct and erect the marble work in such building at a cost of more than $9,000. There is a balance of $6,807.96 due appellant, which Klausman failed to pay. Appellant brought suit against Klausman and after his death recovered judgment in the Howard Circuit Court against his estate for the full amount of its claim, but because of the insolvency of Klausman's estate, nothing was or could be collected thereon. Appellant then filed its claim against the estate of William M. Carper, to which claim Alice Carper, as executrix, filed a plea in

abatement, alleging that at the time when appellant entered into said contract and at the time when it furnished the material and performed the work in connection with such contract it was a foreign corporation and had not, at such time, complied with the corporation laws of this state, and that by reason of such failure, appellant could not maintain an action in this state upon said claim. A demurrer to this plea was overruled, and, appellant refusing to plead over, a judgment abating the action was rendered, hence this appeal.

The question presented by this appeal is: Can a foreign corporation, which has made a contract and transacted business thereunder in this state by furnishing material and labor for the construction of a building before compliance with the statute relative to foreign corporations, upon subsequent compliance with such statute, maintain an action in a court of this state to recover for such material and labor?

The right of appellant to do business in this state and to maintain actions growing out of such business, in the courts of this state requires a compliance with, and is regulated by Chapter 176, Acts 1907, p. 286, §§4909-4914 Burns 1926. The first section of this act provides that:

"Before any foreign corporation for profit shall be permitted or allowed to transact business or exercise any of its corporate powers in the State of Indiana, other than insurance companies, building and loan companies and surety companies, they (it) shall be required to comply with the provisions of this act and shall be subject to all the regulations prescribed herein, as well as all other regulations, limitations and restrictions applying to corporations of like character organized under the laws of this state."

Section 2 provides that such corporations must make application to the Secretary of State, stating, among other things, where its principal office in this state will

be located and the name and address of some agent or attorney-in-fact upon whom service of process can be had in all suits commenced in this state. Sections 3 and 4 relate to the form of the application and the certificate of authority. Section 5 provides that after such corporation has been admitted to do business in the state, it shall constantly keep on file with the Secretary of State an affidavit of the president and secretary showing the location of its principal business office in this state and the name of some person who may be found at such office for the purpose of accepting service in all suits against the corporation, and that as often as the corporation shall change its location or its agent for receiving service, a new affidavit shall be filed to take the place of the one previously filed. Section $5\frac{1}{2}$ requires that all corporations admitted to do business in the state shall make a report to the Secretary of State 30 days after January 1 of each year showing, among other things, the proportion of its property and assets in this state and when such report shows an increase of $5,000 or more in this state an additional fee shall be paid on such increase. Section 7 relates to the amount of fees to be paid. Section 9 (§4918, Burns 1926) is as follows:

"Every foreign corporation amenable to the provisions of this act which shall neglect or fail to comply with any of the provisions of the same, as herein provided, shall be subject to a penalty of not less than one thousand ($1,000) dollars nor exceeding ten thousand ($10,000) dollars, to be recovered before any court of competent jurisdiction, and it is hereby made the duty of the secretary of state, as he may be advised or may ascertain that any corporation is doing business in contravention of this act, to report such fact to the attorney-general, and it shall be the attorney-general's duty and the duty of the prosecuting attorney of the proper county to bring such action at law as shall be necessary for the recovery of the penalties imposed hereby, and in addition to such penalty, if after this act shall take

effect, any foreign corporation shall fail to comply therewith, no suit may be maintained, either at law or in equity, upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this state."

The verified claim, which stands as the complaint, alleges that appellant had complied with the law of this state and was authorized to transact business in this state. Appellant calls attention to the fact that the plea does not allege that appellant had not complied with the statute prior to the commencement of this action, and insists that a contract of a foreign corporation made by it before compliance with the statute, if not immoral or against public policy, or prohibited by law, is not void, and may be enforced by such corporation in the courts of this state upon subsequent compliance with the statute.

*U. S. Construction Co.* v. *Hamilton Nat. Bank* (1920), 73 Ind. App. 149, 126 N. E. 866, 868, is relied upon by appellee to sustain the action of the court in overruling the demurrer to the plea in abatement in the instant case. Appellant, however, insists that that case is in conflict not only with the decisions of the Supreme Court of this state, but that it is also in conflict with the weight of authority as announced by the majority of courts of last resort of other states and should be overruled. In that case the action was commenced by a foreign corporation, which had not, either before or after the execution of the contract sued on, complied with the statute authorizing it to do business in this state, and which was subject to all the penalties prescribed in §4918, *supra,* including the prohibition against maintaining an action in the courts of the state. The question as to whether the plaintiff, in that case, could have maintained an action upon complying with the statute subsequent to the execution of the contract was neither presented nor decided.

The court, after quoting §4085, Burns 1914, which is §4909, Burns 1926, said: "The provisions of the act to be complied with follow in subsequent sections with which appellant had not complied, among which is one making a failure to comply therewith a misdemeanor. This renders the contract made in violation thereof void." The inference to be drawn from this statement is that a contract made by a non-complying foreign corporation is void because the statute makes the act of such corporation in transacting business in this state a crime. This is the first case in Indiana so holding. *Sandage* v. *Studebaker, etc., Co.* (1895), 142 Ind. 148, 41 N. E. 380, 34 L. R. A. 363, 51 Am. St. Rep. 165; *United Lead Co.* v. *J. W. Reedy, etc., Co.* (1906), 222 Ill. 199, 78 N. E. 567, 6 Ann. Cas. 637, are cited in support of the holding of the court.

The contract in the Sandage Case grew out of the sale of a patent right. The particular contract there involved was prohibited by law. Its execution was by express words of the statute (§12227, Burns 1926) made a misdemeanor, and under the statute was invalid as between the parties and those having notice. It was not void. Section 6055, R. S. 1881, §12225, Burns 1926.

The Illinois Case does not appear to be a well considered case. It is not in line with the weight of authority, and is based on *Cincinnati, etc., Assurance Co.* v. *Rosenthal* (1870), 55 Ill. 85, 8 Am. Rep. 626, which was an action by a non-complying foreign insurance company to recover on a premium note. The Illinois insurance statute was directed against the insurance business and the doing of certain things which was declared to be unlawful. A corporation violating the statute was subject to no penalty. The only method the state had of enforcing the statute was to hold contracts made in violation of its provisions were void.

The Supreme Court of Utah in *A. Booth & Co.* v. *Wie-*

*gand* (1906), 30 Utah 135, 83 Pac. 734, 736, 10 L. R. A. (N. S.) 693, in discussing the Rosenthal Case, said: "The statute provided that it should not be lawful for any agent of a foreign insurance company 'to directly or indirectly take risks, or to do or transact any business of insurance in this state' without first procuring a certificate, etc. Without complying with the statute the agent insured a citizen of Illinois, who gave his promissory note in payment of premiums. In an action on the note by the company it was held that the contract was void, because of the non-compliance with the statute. *The statute was directed against a particular kind of business, and the doing of specific acts and things was made unlawful.* The giving of the note was with respect to these specific things, denounced by the statute. It will also be observed that there the contract was executory on the part of the company seeking to enforce it. *Here the contract was fully executed on the part of the plaintiff, and the consideration thereof accepted and retained by the defendant.*" (Our italics.)

In *Bradford* v. *Indiana Harbor Belt R. Co.* (1927), (C. C. A.), 16 Fed. (2d) 836, it was contended that the defendant, an Indiana corporation, had not complied with the Illinois law relating to foreign corporations. The court, in answer to this contention, said: "Under the Illinois law, a foreign corporation, failing to qualify to do business within the state, is subject to two penalties: (a) It may be fined; (b) it may not maintain a suit in the Illinois state courts. While there are Illinois cases holding that an unqualified foreign corporation's contracts are void, it is quite apparent, from all the authorities in that state, that that is not true. even in Illinois. . . . *The Illinois statute does not make the contracts of such corporations void, and in such cases the federal courts are open to such corporations, both to sue and defend.* (Our italics.) *David Lupton's Sons* v, *Auto. Club*

(1912), 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A 699; *Kawin & Co.* v. *Am. Colortype Co.* (1917), (C. C. A.), 243 Fed. 317; *Vitagraph Co.* v. *Twentieth Century Co.*, (C. C. A.), 157 Fed. 699." The last two cases relating to contracts made in Illinois by noncomplying foreign corporations. In each of these cases it was held that the Illinois statute did not undertake to make the contracts void.

In order to fully comprehend and correctly apply the earlier Indiana decisions it is necessary that they be considered in connection with the governing statutes.

Sections 1 and 2 of the foreign corporation act of 1852, 1 R. S. 1852, p. 242, §§3022 and 3023, R. S. 1881, required (1) that agents of foreign corporations, before entering upon their duties, should file with the clerk their power-of-attorney or authority; and (2) that they should, before commencing to do business, file with the clerk an authenticated copy of a resolution of the company authorizing service of process on such agent.

The punctuation in section 4, as the same appears in the revised statutes of 1852, and 1881, being different, led to an examination of the enrolled act in the office of the secretary of state. Section 4, as punctuated in the enrolled act, is as follows: "Such foreign corporations shall not enforce in any court of this state any contract made by their agents or by persons assuming to act as their agents before a compliance by such agents or persons acting as such, with the provisions of sections one and two of this act."

By section 7, §3028, R. S. 1881, any person acting as agent of a foreign corporation without complying with the provisions of the act, was subject to a fine in any sum not less than $50.

This statute affected foreign insurance companies as well as other foreign corporations, and in *Rising Sun Ins. Co.* v. *Slaughter* (1863), 20 Ind. 520, it was held

that a policy of insurance negotiated in this state by a foreign insurance company without a previous compliance with the requirements of the act was void. That case was, in effect, overruled in *Deming* v. *State ex rel.* (1864), 23 Ind. 416, where the court, after stating the general rule that a contract prohibited by statute is void, said: "But the rule is properly applied only where the reason upon which it is founded exists. 'The law ceases with the reason thereof,' and it is a grave error to regard it as a merely arbitrary rule, applicable to *all* contracts which are prohibited by statute. It is generally applicable because the thing prohibited is usually immoral, or against public policy. Gaming contracts, contracts made on the Sabbath, contracts of champerty and maintenance, and many others of like nature, might be mentioned as examples." See also *New England, etc., Ins. Co.* v. *Robinson* (1865), 25 Ind. 536; *Walter A. Wood, etc., Co.* v. *Caldwell* (1876), 54 Ind. 270, 23 Am. Rep. 641; *Phoenix Ins. Co.* v. *Pennsylvania R. Co.* (1893), 134 Ind. 215, 33 N. E. 970, 20 L. R. A. 405.

In the case last cited, the court, after stating that our adjudged cases were in the utmost confusion, and that it was impossible to reconcile them, at page 219, said: "A careful examination of our cases will disclose the fact, however, we think, that there is now no case in this state which holds that a policy of insurance issued to one of our citizens by a foreign insurance company which has failed to comply with our statute upon the subject of foreign insurance companies is void. There is one line of decisions which holds that a contract entered into by a citizen of the state with a foreign corporation which has not complied with the statute, by the terms of which the citizen has bound himself to the corporation, is void, while another line of decisions holds that such contract is not void, but that the right to enforce it is sus-

pended until the corporation has complied with the statute. . . . It may not be improper to remark in passing, however, that this court seems to have settled down upon the doctrine that such contracts are not void, but that the right of the corporation to enforce such contracts is suspended until it has complied with the terms of the statute, and that a failure to perform the duty required by law can only be taken advantage of by way of plea in abatement." Some of the cases cited, held contracts made by a foreign insurance corporation which had not complied with the Acts of 1865, Acts 1865 Sp. Sess. 105, 1 R. S. 1876, p. 594, regulating foreign insurance companies doing business in this state, were void, and some of them held such contracts not void. Of the Indiana cases holding such contracts void, we cite, *Hoffman* v. *Banks* (1872), 41 Ind. 1; *Farmers, etc., Ins. Co.* v. *Harrah* (1874), 47 Ind. 236; *Cassady* v. *American Ins. Co.* (1880), 72 Ind. 95, where noncomplying insurance companies had sued to recover on premium notes and, *Union Central Life Ins. Co.* v. *Thomas* (1874), 46 Ind. 44, where the plaintiff sought to recover a cash premium which he had paid for a policy issued by a noncomplying foreign insurance corporation.

But in *Johnson* v. *State* (1879), 65 Ind. 204, the court, in discussing the effect of the failure of a foreign insurance company to comply with the statute, said: "It has been decided by this court, that a failure of a foreign corporation to comply with the statute providing the terms upon which it may do business in this state does not render a contract entered into by such corporation within the state illegal and void, but only imposes disabilities in the enforcement of such contract, until the provisions of such act are complied with."

*Behler, Admr.* v. *German, etc., Ins. Co.* (1879), 68 Ind. 347, was an action on an insurance policy which con-

tained a provision that insurance in any other company without the knowledge and consent of the company, rendered the policy void. One paragraph of answer alleged that the insured had taken out a second policy in violation of that provision. Reply that the company which issued the second policy was a noncomplying foreign company and that such second policy was for that reason void. In holding the answer good and the reply bad, the court said: "This question was fully and carefully examined by Perkins, J., in the case of *Walter A. Wood Mowing, etc., Machine Co.* v. *Caldwell, supra,* wherein it was held that an answer, setting up the noncompliance by a foreign corporation with our statute, was in the nature of a plea in abatement, suspending the right of action until the company had complied with the statute. The thorough examination of the question in the case cited relieves us from an extended examination in this case." See, also, *Daly* v. *National, etc., Insurance Co.* (1878), 64 Ind. 1.

The insurance act of 1865, made it unlawful for any agent of any foreign insurance company to directly or indirectly take any risks or transact any business of insurance in this state without procuring a certificate of authority from the auditor of state with a statement of the president or secretary of the company showing certain facts, and authorizing such agent to acknowledge service of process. Section 4, required the agent in case of loss, to retain all funds then or thereafter coming into his possession until such loss was paid, with a provision for the release of a certain part thereof under specified conditions. Section 6, forbade the insertion by such companies of certain conditions in policies. Section 5, subjected by person violating the provisions of the act to a fine and imprisonment. The act required certain things that could be furnished only by the company. Its purpose was to provide means of securing jurisdiction over

the company and to protect the citizens of this state against insolvent and spurious insurance companies. The statute, however, made no provision for the infliction of any penalties, pecuniary or otherwise, on a corporation that failed to comply with its provisions.

In *Walter A. Wood, etc., Co.* v. *Caldwell, supra,* the court, after setting out the principal provisions of said Act of 1865, called attention to the fact that it contained no "section or clause thereof, declaring what the effect of a noncompliance with its provisions shall be upon contracts made before compliance," and cited cases in which it had been held that contracts made in violation of it had been void. On page 275, the court said the provisions of the Act of 1852, relating to foreign corporations were all, in form directory or mandatory to the agents alone, and penal as to them alone, that "In the foreign insurance act there are positive declarations of illegality of acts, positive prohibitions to the corporation, and penalties upon any person or persons violating the provisions of this act, not simply upon the agents neglecting to comply with the provisions as to agents; and it leaves the effect of such violations upon contracts to be determined by interpretation and construction of the statute by the courts, according to the rules of the common law. At common law, the general rule is, that if a statute forbids an act to be done or provides a penalty for doing it, any contract to do such act is invalid, whether the statute declares it to be so or not." Attention was called to the differences between the acts concerning foreign corporations and foreign insurance companies to show that decisions on contracts arising under the latter would not be authority in cases arising upon contracts under the former, and it was held that a contract made by a foreign corporation while doing business in this state without complying with the Act of 1852, was not void, that it could not be enforced prior to a compliance with the stat-

ute, but that it could be enforced after compliance. In answer to the contention that a foreign corporation could neither, before nor after a compliance with the statute, enforce a contract made before compliance, the court said : "But we think this interpretation inconsistent with the purpose of the act, is somewhat unreasonable, not in harmony with the general spirit of the act, is against its better grammatical construction, and not supported by its legislative history. While this interpretation concedes the validity of the contract, it renders it practically void, by prohibiting its enforcement. We can see no good reason, the contract being admitted to be valid, why its enforcement should be delayed longer than noncompliance with the requirements of the statute continues. . . . If it had been the purpose of the legislature to render a contract invalid, where it was made by the agent of a foreign corporation before he complied with sections one and two, it would have so declared in section four when it undertook to provide what effect such noncompliance should have upon the corporation. It did not see fit to leave the judiciary to determine how the corporation would be affected by sections one, two, three, five, six and seven of the act, where the agent had not complied with sections one and two at the time he made a contract, but it declared that effect in section four. The legislature must be supposed to have intended just what it said and no more ; and that is, that a foreign corporation should not enforce such a contract in the courts of the state until it was placed in a position, by a compliance with the act, where personal service could be had upon it within the state, and personal judgment taken against it."

In *Domestic Sewing Machine Co.* v. *Hatfield* (1877), 58 Ind. 187, agents of a foreign corporation not authorized to do business in this state sold a number of sewing machines, accepting notes from the purchasers. These

notes, in fact, belonged to the sewing machine company. On an accounting it was found that such notes amounted to $500, and instead of delivering these notes to the company, the agents gave their note to the company for that amount, and when sued on this note, they defended on the ground that the company had not complied with the law authorizing it to transact and do business in this state. The complaint alleged the above facts and admitted that the plaintiff had not complied with the law. In holding that a demurrer to the complaint had been properly sustained, the court said: "The note sued upon cannot be enforced until the plaintiff shall have complied with the requirements of the statute above cited."

In *Swing* v. *Wellington* (1909), 44 Ind. App. 455, 89 N. E. 514, the receiver of a foreign insurance company which had not complied with the statute authorizing it to do business in this state, brought suit to recover a balance alleged to be due by reason of certain policies. In referring to the fact that the company had not, and the receiver could not comply with the law, the court, at page 462, through Myers, J., said: "Were this an action by a corporation as a going concern, and the question was properly presented, there would be no doubt under the decided cases in this state that its remedy to enforce the payment of the assessments for which suit is brought would be suspended until a compliance with our statutory requirements." To the same effect see *Clarke* v. *Darr* (1901), 156 Ind. 692, 60 N. E. 688; *Wiestling* v. *Warthin* (1891), 1 Ind. App. 217, 27 N. E. 576; *North Mercer, etc., Co.* v. *Smith* (1901), 27 Ind. App. 472, 61 N. E. 10; *Peoples Bldg., etc., Assn.* v. *Markey* (1901), 27 Ind. App. 128, 60 N. E. 1013; *Security Savings, etc., Assn.* v. *Elbert* (1899), 153 Ind. 198, 54 N. E. 753; *Maine Guarantee Co.* v. *Cox* (1896), 146 Ind. 107, 42 N. E. 915, 44 N. E. 932; *Phoenix Ins. Co.* v. *Pennsylvania R. Co., supra;* *Insurance Co.* v. *Wellman* (1879), 69 Ind. 413; *Elston* v.

*Piggott* (1884), 94 Ind. 14; *Singer Mfg. Co.* v. *Brown* (1878), 64 Ind. 548; *Daly* v. *National Ins. Co., supra.* For decisions from other jurisdictions dealing with statutes somewhat like the statute of this state, we call attention to the following: *Ward Land, etc., Co.* v. *Mapes* (1905), 147 Cal. 747, 82 Pac. 426; *Western Electric Co.* v. *Pickett* (1911), 51 Colo. 415, 118 Pac. 988, 38 L. R. A. (N. S.) 702, Ann. Cas. 1913A 1322; *Moddy* v. *Morris-Roberts Co.* (1923), 38 Idaho 414, 226 Pac. 278; *Woolfort* v. *Dixie Cotton Oil Co.* (1905), 77 Ark. 203, 91 S. W. 306, 113 Am. St. Rep. 137, 7 Ann. Cas. 217; *Vickers* v. *Buck Stove & Range Co.* (1905), 70 Kan. 584, 79 Pac. 160; *National Fertilizer Co.* v. *Fall River, etc., Bank* (1907), 196 Mass. 458, 82 N. E. 671, 14 L. R. A. (N. S.) 561, 13 Ann. Cas. 510; *Hastings Industrial Co.* v. *Moran* (1906), 143 Mich. 679, 107 N. W. 706; *Neyens* v. *Worthington* (1908), 150 Mich. 580, 114 N. W. 404, 18 L. R. A. (N. S.) 142; *Neuchatel Asphalt Co.* v. *New York* (1898), 155 N. Y. 373, 49 N. E. 1043; *M. S. Cohn Gravel Co.* v. *Terry* (1928), 135 Okla. 275, 275 Pac. 1048; *Vermont Farms, etc., Co.* v. *Hall* (1916), 80 Ore. 304, 156 Pac. 1073; *Swift* v. *Little* (1907), 21 R. I. 108, 65 Atl. 615; *Temple* v. *Riverland Co.* (1921), (Tex. Civ. App.), 228 S. W. 605; *Thompson* v. *Building, etc., Assn.* (1905), 57 W. Va. 551, 50 S. E. 756.

Appellee says that the provisions of the Act of 1907, concerning foreign corporations and the Act of 1865, regulating foreign insurance companies are similar as to "prohibitions, provisions and penalties," and referring to *Walter A. Wood, etc., Co.* v. *Caldwell, supra,* but without citing the cases holding that contracts made by foreign insurance companies are void, impliedly asks that we follow those cases and hold the agreement of appellant to furnish material to Klausman void, and that we ignore all of the cases of the Supreme Court and this court heretofore cited, holding such contracts not void.

Appellee has overlooked the fact that the Insurance Act of 1865 prescribes no penalties of any kind insofar as non-complying corporations are concerned, and that the correctness of the decisions holding contracts made by non-complying foreign insurance companies void, might be upheld because of the failure of the statute to provide a penalty.

Section 12160, Burns 1926, §9711a Burns 1914, Acts 1909, p. 358, provides that any person or persons conducting or transacting business in this state under any name other than the real name or names of such persons shall file in the office of the clerk of the circuit court of the county in which a place of business so conducted is situated, a certificate stating the full name and residence of each person engaged in or transacting such business. The third section of the act imposes a fine of not more than $100 for any violation of its provisions. It was once held that the failure to file the certificate as required by that act, rendered a contract made by the plaintiff for the sale of merchandise void and that there could be no recovery. *Horning* v. *McGill* (1917), 188 Ind. 332, 116 N. E. 303. That case, however, was overruled in *Humphrey* v. *City Nat. Bank* (1921), 190 Ind. 293, 130 N. E. 273, 277, where the court at page 306, citing *Walter A. Wood, etc., Co.* v. *Caldwell, supra,* and *Phoenix Ins. Co.* v. *Pennsylvania R. Co., supra,* said: "Statutes of this kind have been enacted many times in the past, especially in relation to non-resident corporations doing business in this state. And where the business done was of a kind not restricted nor controlled by law, and it was obvious that the purpose of a statute was merely to enable the courts to obtain jurisdiction of the persons so transacting business, and not to make the business unlawful, the courts have uniformly held that, in addition to the imposition of a penalty for failure to obey the statute, the effect of such statute was to bar a plaintiff from main-

taining an action growing out of business to which it applied until the statute was complied with. . . . The common-law rule that if a statute provides a penalty for doing an act, any contract to do such act is void, does not apply where the contract is not immoral nor illegal and is not prohibited, but the statute merely provides that certain classes of persons making such contracts shall do a specified act towards submitting themselves to the jurisdiction of the courts. . . . And in an action on a contract which is not for any cause made illegal, the fact that the plaintiff has not properly registered himself in the clerk's office, so as to afford other parties the facil-ity for suing him which is made a condition of his right to maintain suits, is matter in abatement, to be pleaded by the defendant." To the same effect see *Piggly-Wiggly Stores* v. *Lowenstein* (1925), 197 Ind. 62, 147 N. E. 771, where the court, at page 69, in answer to the contention that the statute prohibited the partnership from exe-cuting contracts until the certificate was filed, said: "The act contains nothing whatever to that effect, but merely provides that certain persons, if conducting a business under any name other than their real names, 'shall file' a certificate stating certain facts, and that a violation of the provisions of the act shall be punished by a fine." And this court, in *Ayres* v. *McNeely* (1921), 75 Ind. App. 327, 130 N. E. 539, held a contract, which was neither immoral nor illegal, entered into by persons doing business under a firm name other than their real names, was not void because of a failure to comply with the statute.

The contract between appellant and Klausman by which the former agreed to furnish the material and labor in question was neither immoral nor illegal. It was not a contract, the execution of which had been for-bidden by law. A foreign corporation doing business in this state without complying with the law of this state

is subject to two penalties: (1) It may be forced to pay a penalty of not less than $1,000 nor more than $10,000; and (2) it may not maintain a suit in the courts of this state. The statute of this state does not, as do the statutes of some states, declare contracts entered into by a foreign corporation before complying with the statute, void, nor does it provide that no action can be maintained on such contracts.

The general rule is, that a statute which merely closes the courts of the state to the non-complying foreign corporation doing business within the state, and which does not expressly or constructively declare the contract void, does not prevent the maintenance of an action by such foreign corporation in a federal court sitting in that state, upon a contract made within the state. Nor does such a statute prevent a recovery upon such contract in an action prosecuted in some other state. This would not be true if the contract were void in the state where it was executed. Such contracts are not void, but remain valid and enforceable by suit in the federal courts or in the courts of any other jurisdiction though there has been no attempt to comply with the statute. *David Lupton Sons Co.* v. *Automobile Club, supra; Louis Ilfeld Co.* v. *Union Pac. R. Co.* (1927), (C. C. A.), 23 Fed. (2d) 65; *Ockenfels* v. *Boyd* (1924), (C. C. A.), 297 Fed. 614; *Kawin Co.* v. *American Color-type Co. supra; Johnson* v. *New York, etc.* (1910), (C. C. A.), 178 Fed. 513; *Mutual Benefit Life Ins. Co.* v. *Winnie* (1897), 20 Mont. 30, 49 Pac. 446.

The New York statutes provide that: "No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state, unless *prior* to the making of such contract it shall have procured such certificate." (Our ital-

ics.) A contract made in violation of this statute was held not absolutely void; that the only penalty was that prescribed by the statute,—a disability to sue in the courts of that state and that the contract was valid and effective in all other respects. *Mahar* v. *Harrington Park Villa Sites* (1912), 204 N. Y. 231, 97 N. E. 587, 38 L. R. A. (N. S.) 210. And in *J. R. Alsing Co.* v. *New England, etc., Co.* (1901), 66 App. Div. 473, 73 N. Y. Supp. 347, affirmed in 174 N. Y. 536, 66 N. E. 1110, it was held that a foreign corporation doing business in that state without having complied with the statute, was not prevented from recovering upon a counterclaim growing out of the transaction upon which a plaintiff sued.

It is not for the judiciary to inflict additional and harsh penalties. If the legislature had intended to declare all contracts made by a foreign corporation doing business without complying with the law void it could, by appropriate words, have easily and clearly expressed that intention. Our statute does not declare such contracts void. It is silent upon that subject, and we do not believe this would have happened if the legislature had intended to declare such contracts void. If such had been the intent, the question would not have been left to the uncertain result of litigation and judicial decision. *Fritts* v. *Palmer* (1899), 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317.

The wording of our foreign corporation statute has a tendency to imply that the legislature contemplated the possibility of such corporations doing business in the state without compliance, and in order to force compliance, in addition to the liability for the pecuniary penalty, the provision that if any such corporation failed to comply with the act no suit should be maintained by it upon any claim, in any court of the state, was added. The very fact that the prohibition against maintaining an action in the courts of the state was inserted in the stat-

ute ought to be conclusive proof that the legislature did not intend or understand that contracts made without compliance with the law were void. The statute does not fix any time within which foreign corporations shall comply with the act. If such contracts were void no suits could be prosecuted on them in any court.

We must be careful to distinguish between contracts that are by law prohibited or that are *malum in se* and those arising out of a business that is not prohibited. Contracts that are prohibited or that are *malum in se* are void, and cases dealing with such contracts are not in point in the instant case. No court will lend its aid to one who seeks to ground his action upon an immoral or illegal act.

The Supreme Court of Delaware, in discussing this question in the well considered case of *Model Heating Co.* v. *Magarity* (1911), 2 Boyce (Del.) 459, 81 Atl. 394, L. R. A. 1915B 665, said: "But obviously there is a difference in the effect of statutes which expressly, or by necessary implication, and as part of a commercial policy of the state, made a particular kind of contract unlawful, and one which prohibits under penalty a foreign corporation from carrying on business generally, without reference to a particular kind of business, until one carrying on business maintains an agent on whom process against it may be served. . . . Prohibited contracts are unenforceable because rendered void by the prohibition to make them, whether the statute declares or not and whether the act be *malum in se* or *malum prohibitum*. A legislative intent to make the contracts unenforceable is evident in such cases. A usurious contract is a typical instance. So contracts for the sale of intoxicating liquors are unenforceable when the sale of such article is prohibited. But this principle is not applicable where there is no prohibition to carry on the particular business in which the plaintiff is engaged,

in the course of which the contract in question was made. In *Johnson* v. *Mason Lodge* (1899), 106 Ky. 838, 51 S. W. 620, the court distinguished between statutes regulating corporations in general and those intended to protect the public against sellers of worthless fertilizers, and those which prohibited the sale of intoxicating liquors without license, and also statutes to regulate insurance corporations. Concerning such prohibited contracts the court said: 'As the vice was in the contract itself and they (the statutes) are therefore distinguishable in this respect from this case, which only involves the idea of disability to sue.' "

And after declaring that the primary object of the law concerning foreign corporations was not to exclude them from the state, or to license them to carry on particular kinds of business, but to bring them within the reach of the process of the courts of that state, the court said the purpose of the law relating to foreign insurance companies, was to protect the people of the state from being injured or defrauded by spurious, insolvent and dishonest insurance companies and that contracts made by such in the course of business in that state were unenforceable in that state. And continuing the court said: "Different principles are applicable where the primary object of legislation is not to regulate particular kinds of contracts or license particular kinds of business, . . . or to secure to the state and the people thereof a way to serve process on corporations organized in other states, when they come here to do business by branch offices and agents located here."

*Allen* v. *Alleghany Co.* (1905), 196 U. S. 458, 25 S. Ct. 311, 49 L. Ed. 551, was an action on a promissory note executed in New York. The action was prosecuted in a state court in New Jersey. One paragraph of answer alleged that the note was executed in New York to the plaintiff, a corporation created under the laws of North

Carolina, that when the note was executed, the plaintiff had not complied with the statute of New York. Another paragraph of answer alleged that the note was executed in Pennsylvania, and that when it was executed the plaintiff had not complied with the laws of that state. The New York statute provided that no foreign corporation doing business in that state should maintain any action in that state upon any contract made in that state prior to its compliance with the statute. The Pennsylvania statute forbade foreign corporations to do business in that state without complying with the laws of that state and made it a misdemeanor for any agent, employee, or officer to transact any business for such corporation without the law having been complied with. The court of errors and appeals of New Jersey (69 N. J. L. 270, 55 Atl. 724) held that a contract made in contravention of these statutes, though not enforceable in the courts of the state where executed, was not void and might be enforced in New Jersey. The Supreme Court of the United States, in dismissing a writ of error, said neither statute declared the contract so made void, and recognized the rule that a contract declared void by the *lex loci contractus* is void everywhere. ·

The New Jersey statute provides that until a corporation has obtained a certificate it can not maintain an action in the courts of that state and provides for a penalty to be collected by the Attorney General. In *Protective Finance Co.* v. *Glass* (1924), 100 N. J. L. 85, 125 Atl. 879, it was held that a right to sue was suspended until a certificate was obtained. To same effect see *Day* v. *Stokes* (1925), 97 N. J. Eq. 378, 127 Atl. 331; *Strasbaugh* v. *Steward, etc., Co.* (1916), 127 Md. 632, 96 Atl. 863. And as was said in *Alleghany Co.* v. *Allen* (1903), 69 N. J. L. 270, 55 Atl. 724, 727: "The tendency of judicial decisions on this subject, when the statute does not declare the contract to be void, is to a strict construc-

tion maintaining the validity of the contract, and holding that the only effect of such legislation in the state where it is enacted is to impose the prescribed penalties and the expressed disabilities."

The primary purpose of our statute is to compel a foreign corporation desiring to do business within the state to submit itself to the jurisdiction of the courts of this state. The statute was not intended to exclude foreign corporations from the state. It does not, in terms, render invalid contracts made in this by non-complying foreign corporations.

The better reason, the wiser and fairer policy, and the greater weight lie with those decisions which hold that where, as here, there is a prohibition with a penalty, with no express or implied declarations respecting the validity or enforceability of contracts made by unqualified foreign corporations, the contracts made in this state by corporations created elsewhere and doing business here without complying with the laws of this state are enforceable in the courts of this state upon compliance with the law, on the ground that the purpose of the statute was not to prohibit business, but to accomplish a collateral object, viz.: to bring such corporations within reach of the process of the courts of this state, *Model Heating Co.* v. *Magarity, supra.*

The statutes imposing conditions upon foreign corporations may be divided into three classes: (1) Those declaring contracts of such corporations as fail to comply with the law void; (2) those declaring that such corporations shall do no business in the state without complying with the terms of the statute, without declaring any penalty for failure to comply with the statute; and (3) those declaring certain penalties for failure to comply with the statute.

Contracts made in violation of the first and second classes are void. For cases outside Indiana dealing with

statutes not declaring a penalty and holding contracts void, see *Watrous* v. *Blair* (1871), 32 Iowa 58; *Lester* v. *Howard Bank* (1870), 33 Md. 558; *Bank of B. C.* v. *Page* (1877), 6 Ore. 431; *Lasher* v. *Stimson* (1892), 145 Pa. 30, 23 Atl. 552; *Thorne* v. *Travellers* (1876), 80 Pa. St. 15; *McCanna & Fraser Co.* v. *Citizens Trust & Surety Co.* (1896), (C. C. A.), 74 Fed. 597; *Pittsburgh Construction Co.* v. *West Side, etc., Co.* (1907), (C. C. A.), 154 Fed. 929, 11 L. R. A. (N. S.) 1145; *Cincinnati, etc., Assurance Co.* v. *Rosenthal, supra; Harris* v. *Runnels* (1851), 12 How. (53 U. S.) 80, 13 L. Ed. 901.

The statute of Arkansas, Act of February 16, 1899, provides that any corporation which shall refuse or fail to comply with the act shall be subject to a fine of not less than $1,000, and shall not "maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort." Any corporation theretofore engaged in business was given ninety.days after the passage of the act to comply with the provision. In *Buffalo, etc., Copper Co.* v. *Crump* (1902), 70 Ark. 525, 69 S. W. 572, 91 A. S. R. 87, a foreign corporation doing business in that state commenced an action in December, 1898, and in August, 1899, which was more than ninety days after the passage of the act, it complied with the statute. In holding that the action could be maintained the court, at page 535, said: "The act of February 16th does not expressly prohibit the institution of an action because of a failure to perform any condition; nor does it intend to forever prohibit the maintenance of any action because the plaintiff therein is a foreign corporation, and has not within any particular time complied with its terms. Penalties are imposed on account of past conduct or omissions. The penalties of the act in question are, doubtless, intended to compel an observance of its terms. When that is done, its purpose is accomplished; the condition upon which

the right to maintain an action depends is performed; and the plaintiff can in the future, prosecute it to a final judgment." To same effect see *Sutherland-Innes Co.* v. *Chaney* (1904), 72 Ark. 327, 80 S. W. 152. As was said in *Woolfort* v. *Dixie Cotton Oil Co., supra:* "If it had been intended to declare the contract absolutely void and of no effect, the further provision that no suit should be maintained thereon was superfluous."

A statute making the business illegal without complying with the statute is distinguishable from a statute dealing with the right of foreign corporations to do business in the state and which does not make unlawful the business itself. *Randle* v. *Interstate Grocer Co.* (1921), 147 Ark. 402, 227 S. W. 760.

The statute involved in *Waxachachie Medicine Co.* v. *Daly* (1916), 122 Ark. 451, 183 S. W. 741, 742, after prescribing a penalty of a fine of not less than $1,000, for failure to comply with its provisions, provided that: "As an additional penalty any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid cannot make any contract in this state which can be enforced by it either in law or in equity, and the complying with the provisions of this act after suit is instituted shall in no way validate said contract." After discussing this provision, the court said: "If the legislature had intended that compliance with the terms of this act by a delinquent foreign corporation after the entry into a contract, and before suit brought, on its part, would not enable it to enforce such contract, then there was no use to add anything after the words 'which can be enforced by it either in law or equity.' Since the statute does not expressly declare the contracts void, we do not think, in view of the language used that the lawmakers intended to fix such additional penalty for the failure to comply with the terms of the

statute." This case was followed and quoted from with approval in *J. R. Watkins Med. Co.* v. *Mosley* (1919), 139 Ark. 294, 213 S. W. 385.

In *Toledo, etc., Co.* v. *Thomas* (1890), 33 W. Va. 566, 11 S. E. 37, 38, 25 A. S. R. 925, the statute under consideration provided that a foreign corporation "may, unless otherwise expressly provided, hold property and transact business in this state, upon complying with the requirements of this section, and not otherwise," and that "every such corporation which shall do business in this state without having complied with the provisions of this section shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than five hundred dollars and not more than one thousand dollars for each month its failure so to comply shall continue." The statute was held to be in derogation of the common law, to be penal and that it should be strictly construed. After stating that the purpose of the statute was to protect parties dealing with such corporations, to secure easy means of obtaining jurisdiction in the local courts and not to render contracts void, the court said: "Hence the decided weight of authority is that, where the legislature has not expressly declared that this result shall follow from a failure to comply with the statute, *the courts ought not to imply such a result, unless this be necessary in order to attain the primary object for which the statute was enacted.* Upon this ground it has been held that a contract made by a foreign corporation *before it has complied with the statutory prerequisites to the right to do business will not, on that account, be held absolutely void, unless the statute expressly so declares;* and, if the statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others. *Columbus Ins. Co.* v. *Walsh* (1853), 18 Mo. 229; *Union, etc., Ins. Co.* v. *McMillen* (1873), 24 Ohio St. 67; *Ehrman* v. *Teu-*

*tonia Ins. Co.* (1880), 1 McCrary 123, 1 Fed. 471; *Clay Fire, etc., Ins. Co.* v. *Huron Salt, etc., Co.* (1875), 31 Mich. 346; *Hartford, etc., Ins. Co.* v. *Matthews* (1869), 102 Mass. 221." And after quoting from *Bank of B. C.* v. *Page, supra,* where the court said: "The general rule in that contract in violation of law is void. The only exception to this rule is that, when a law imposes a penalty for the prohibited act it clearly appears that the legislature intended no more than to impose the penalty for the violation of the law, a contract made in violation of such a statute is not void." Referring to the statements quoted from the Oregon Case, the West Virginia court said: "It is evidently the want of such penalty in the statute that influenced the court to hold the contract void."

Attention was also called to the fact that in Vermont and Oregon it had been held that a non-compliance with the precedent conditions of the statute, which imposed no penalty, rendered the contract of a foreign corporation void, because otherwise the statute could be evaded with impunity. In support of the statement quoted from *Bank of B. C.* v. *Page, supra,* see *Lester* v. *Howard Bank, supra, Watrous* v. *Blain, supra,* and *Wood, etc., Co.* v. *Caldwell, supra.*

The contract in the Oregon Case was held void, because of the fact that the statute provided no penalty for its violation, the court saying: "The legislature has prohibited the contract. It has provided no penalty for its violation. Unless the contract shall be held void, the statute is of no effect." To same effect, see *Thompson* v. *Building & Loan Assn., supra.*

While the Supreme Court of the United States, in *Harris* v. *Runnels, supra,* recognized the general rule that contracts made in contravention of a statute are void, admits that the rule is subject to many exceptions saying:

"Before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for doing a thing which it forbids, that the statute must be examined as a whole, to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so. In other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken for granted that the legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice. In this way the principle of the rule is admitted, without at all lessening its force, though its absolute and unconditional application to every case is denied." To which is added the statement, that, "when the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void." To the same effect see *Lester* v. *Howard Bank, supra.*

In *Blodgett* v. *Lanyon Zinc Co.* (1903), (C. C. A.), 120 Fed. 893, 896, the court, referring to the statute of Kansas relative to the admission of foreign corporations to do business in that state, said it was not enacted for the purpose of destroying contracts or prohibiting their performance; that it was not the intent or purpose of the legislature by such statute to regulate the agreements of foreign corporations with the citizens of the state, or to supervise or prohibit the performance of their contracts; that the object of the statute was to subject foreign corporations doing business in the state to the jurisdiction of the courts of the state, and to the inspection and supervision of its officers, not to the end that citizens of the state might avoid their contracts and perpetrate injustice, but to the end that justice might be administered to such corporations and to the citizens of the state;

"that where a contract or an act in performance of it is *malum in se,* and its invalidity is not declared as a penalty for a violation of the statute, the courts may not declare it, and thus fix a penalty not prescribed by the lawmaking power."

There was no wrong or moral turpitude in the business the court was there considering and, quoting from page 897: "If there was anything wrong in either of these acts, the act became so, not because it was evil in itself, but because it was not done in compliance with the terms of the statutes of Kansas requiring foreign corporations to file their charters to comply with the requirements which those statutes contain. . . . As there was nothing morally wrong in the acts of appellee, as it was not the primary purpose of the statutes under consideration to invalidate such acts or contracts, and as the statutes contain neither express provision nor clear intimation that this was the intent of the legislature, it is not in the province of the courts to do so. While the authorities upon this question are varient and conflicting in the state courts, the federal courts have steadily adhered to the rule, which is sustained by the better reason and the more persuasive opinions in the courts of the states, that, in the absence of an express provision of statute to the contrary, the innocent contracts and acts of a foreign corporation which has failed to comply with the statutes permitting it to do business in the state where the contracts are made and the acts are done are, nevertheless, valid and enforceable because it is not the intent of the authors of such laws to strike down such agreements and acts when they are not evil in themselves." This opinion is quoted from at length and approved in *State* v. *Book Co.* (1904), 69 Kan. 1, 76 Pac. 411, 1 L. R. A. (N. S.) 1041, 2 Ann. Cas. 56.

Chapter 70, Laws of Minnesota, as amended in 1899, provides that, "Before any foreign corporation for pecu-

niary profit shall be authorized or permitted to transact any business in this state, or to continue business herein, if already established, or maintain any action in any of the courts of this state, it shall maintain a public office or place for the transaction of its business, and appoint an agent duly authorized to accept service of process." It also provides that such corporations shall also file in the office of Secretary of State a statement showing proportion of capital stock represented by the business and property in that state and pay a certain fee, after which the Secretary of State shall issue certificate of its compliance and authority to do business.

Section 4, provides that a corporation "which shall neglect or fail to comply with the conditions" of the act shall be subject to a fine of $1,000 and that "no corporation which shall fail to comply with the provisions of this act can maintain any suit or action, either legal or equitable, in any of the courts of this state."

In *Kraft* v. *Hoppe* (1922), 152 Minn. 143, 188 N. W. 163, a foreign corporation engaged in handling real estate, and which had not complied with the law, became the owner by barter and exchange of certain real estate and thereafter sold the same, taking back a mortgage which was later assigned to the plaintiff who sought to enforce the same by foreclosure. The corporation complied with the law after the action was commenced. In answer to the contention that the execution and transfer of the mortgage were unlawful and void, the court, referring to the statute, said: "Its purpose is to subject all foreign corporations doing business in this state to the process of the courts thereof. . . . There is no provision in the statute that contracts of unqualified corporations doing business in this state shall be void. If the Legislature had intended to render contracts entered into by such corporations under such conditions void, it would undoubtedly have so provided. The legal presumption

is that it specified all the penalties it intended to impose and it is not the province of the court to inflict more by construction." This and other cases were cited in *Northwest Ready Roofing Co.* v. *Antes* (1928), 117 Neb. 121, 219 N. W. 848, to the proposition that a statutory penalty is exclusive.

Sections 1, 4, and 9, Article 12, of the Utah Constitution are as follows: Section 1, "All corporations doing business in this State, may, as to such business, be regulated, limited or restrained by law." Section 4, "All corporations shall have the right to sue, and shall be subject to be sued, in all courts, in like cases as natural persons." Section 9, "No corporation shall do business in this state, without having one or more places of business, with an authorized agent, or agents, upon whom process may be served; nor without first filing a certified copy of its articles of incorporation with the Secretary of State."

Sections 351 and 352 R. S. Utah 1898, are as follows, Section 351: "All corporations, not organized under the laws of this state, before doing business within the state, shall file with the Secretary of State, . . . a certified copy of their articles of agreement, a certificate of incorporation, and by-laws, . . . and shall also, before doing business within the state, by resolution, . . . accept the provisions of the Constitution of this state, and designate some person residing in the county in which its principal place of business in the state is situated upon whom process, . . . may be served."

Section 352: "Any such corporation failing to comply with the provisions of the foregoing section shall not be entitled to the benefits of the laws of this state relating to corporations; and any person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions, shall be deemed guilty of a misdemeanor and shall be personally liable on any and all contracts made in this state by him for and in behalf

of such company during the time that it shall remain so in default." etc.

In *A. Booth & Co.* v. *Weigand* (1906), 30 Utah 135, 83 Pac. 734, 735, 10 L. R. A. (N. S.) 693, the court, at page 141, said: "When, by express terms, it has been declared by the state, or where such an intention is clearly manifest from the language used, that contracts, made within the state by a foreign corporation in the course of business within the meaning of the constitutional and statutory provisions without complying therewith, are void or unenforecable, and no action can be maintained thereon by the non-complying corporation, at least so long as such non-compliance exists. That in each case it is the intention of the Legislature, rather than the letter of the statute, which controls. The question before us is therefore to be determined by ascertaining the meaning of the statute and the Constitution, and by determining whether it was the intention of the lawmakers in effect to declare void contracts made in the state by foreign non-complying corporations." Continuing on page 143, the court said: "The decided weight of authority and the trend of later cases are to the effect 'that the failure of the foreign corporation to comply with the domestic statutes prescribing the conditions upon which it shall be permitted to do business within the state does not render its contracts made therein void and non-enforceable, or prevent it from maintaining an action against the domestic citizen thereon, unless the statute so states in express language.' 6 Thomp. Com. L. of Corp., Sec. 7957, and cases. Unless such an intention is clearly expressed in the statute the courts will not hold such contracts void or non-enforceable. They will not do so by implication from loose and indefinite language. The primary object and evident purpose of the statute are to subject foreign corporations to the jurisdiction of our courts, to the inspection and supervision

of the officers of our state, and to acquaint them and the citizens dealing with the corporation of its nature and powers. They are not to invalidate acts or contracts of such non-complying corporations, nor to afford the citizen of the state an opportunity to avoid his contracts made with it, nor is the nullification of his contract or of acts done in pursuance thereof the remedy for the violation of the statute. The state is authorized to enforce the statute, and may do so by proper proceedings on its behalf. Section 3610 and 3611, Revised Statutes 1898. That, together with the penalty imposed for its violation, no doubt was deemed sufficient by the Legislature to accomplish the purpose of the statute, and it is not for the judiciary at the instance or for the benefit of private parties to inflict the additional and harsh penalty of forfeiture by striking down contracts and acts not evil in themselves, especially when, as here, the contract had been fully executed on the part of the corporation, and the consideration thereof accepted and retained by the citizen."

On pages 147 and 148 it is said that, "The authorities all recognize that the purpose of these constitutional and statutory provisions is not designed or intended as a prohibition upon foreign corporations to contract in the state, to the extent of declaring such contracts void and non-enforceable. . . . Where, as here, the contract itself being innocent and concerning a subject matter itself harmless and lawful, and being fully executed upon the part of the corporation and the consideration thereof retained by the citizen, he will not now be heard to defend against its enforcement, and be permitted to nullify his just obligation with respect to it, solely upon the plea of non-compliance of the corporation with the enabling statute."

*Tri-State Amusement Co.* v. *Amusement Co.* (1905), 192 Mo. 404, 90 S. W. 1020, 4 L. R. A. (N. S.) 688, 111

Am. St. Rep. 511, 4 Ann. Cas. 808, supports the contention that the contract in the instant case is void. It is not clear whether that was a suit in equity or whether it was an action at law for damages. The question arose upon a demurrer to the complaint, which alleged that the plaintiff was an Illinois corporation; that the defendant had a leasehold interest in certain real estate in St. Louis on which it maintained a pleasure resort with pavillion, stage and theatre used for giving theatrical performances; that in May, 1898, the plaintiff entered into a contract with the defendant and John Hopkins by which agreement the defendants agreed to furnish to the plaintiff the pavillion, theatre and reserved seats for the purpose of giving theatrical performances therein for a period of fifteen weeks from May 2; that the plaintiff was to furnish the performances, do the advertising, and receive a stated amount for each person charged for admission, settlements to be made at certain times; that Hopkins was to act as manager of the performances; that the plaintiff performed the contract and gave the performances up to September 10, 1898, when defendant refused to allow it to further perform; that the plaintiff was not able to state the profits after September 10. The prayer was for an accounting and for damages. The complaint further alleged that the contract was to last during the whole of the time for which defendant had a lease of the property, which lease would expire in March, 1903, and that the plaintiff, in April, 1899, complied with the law governing foreign corporations. The action was commenced in August, 1899. It is to be observed that the contract there involved had not been executed.

In the instant case the parties to the contract were the stone company and Klausman. Appellee's decedent, William Carper, was not a party to that contract. He was a surety on the bond which Klausman gave the bank.

The plaintiff in the instant case had fully executed its contract with Klausman by furnishing material and performing labor of the value of more than $9,000. Klausman had paid $2,000 on the account and was given credit for freight, etc., leaving a balance of $6,807 due the plaintiff. A notice of mechanic's lien was filed, and later suit was commenced against Klausman and the bank, seeking a judgment against Klausman for the amount due and for a foreclosure of the lien. A judgment was entered in that action against Klausman's estate, he having died, for the amount of the claim, $6,807, but appellant was denied a lien on the building. *Peter, etc., Stone Co.* v. *Marion National Bank* (1926), 198 Ind. 581, 153 N. E. 472. Klausman, when sued, did not plead the failure of appellant to comply with the statute relating to foreign corporations. He thereby waived his right to interpose that defense. He recognized the validity of the contract, and retained the fruits thereof, while the surety on the bond would avoid performance of his obligations, on the ground of its invalidity in direct opposition to the acts of his principal, admitting the contract was valid. If appellee's contention prevails, we will have the anomalous situation of the principal accepting the fruits of the contract and recognizing its validity, while the surety is released upon the theory that the contract is void as to the principal.

Our attention has been called to *American Copying Co.* v. *Eureka Bazaar* (1906), 20 S. D. 526, 108 N. W. 15, 9 L. R. A. (N. S.) 1176. When that case was decided the Supreme Court of South Dakota was composed of three judges. The same court, in *Reed* v. *Todd* (1910), 25 S. D. 421, 127 N. W. 527, 529, referring to the former case, at page 426, said it "was an action on a contract entered into in this state by a foreign corporation which had neither complied with its laws at the time of enter-

ing into the contract nor before action was commenced. A judgment of dismissal on a directed verdict was affirmed, one member of this court regarding the contract as void, one regarding the plaintiff as precluded from maintaining the action by the express terms of the statute, while the other, regarding the contract as valid, thought the judgment should be reversed with directions to dismiss without prejudice in order that the plaintiff might comply with the statute and institute another suit on the same cause of action. All believed the plaintiff could not sue before complying with the statute. Two believed it could not maintain an action on the particular contract in suit even after compliance, while only one considered the contract void."

Article 17, §6 of the Constitution of South Dakota declares that, "No foreign corporation shall do any business in the state without having one or more known places of business, and an authorized agent in the same upon whom process may be served." Sections 883, 885 of the Revised Civil Code, as amended in 1895, Laws 1895, p. 52, is in part as follows: "No corporation created or organized under the laws of any other state or territory shall transact any business within this state, or acquire, hold and dispose of property, real, personal or mixed, within this state, or sue *or maintain any action at law or otherwise, in any of the courts of this state,* until such corporation shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, or shall have complied with the provisions of this section." Then follows provisions requiring the appointment of agents upon whom process can be served, and that *"no action shall be commenced or maintained in any of the courts of this state by such corporations on any contract, agreement or transaction made or entered into in this state, by such corporation, unless such corporation shall have fully*

*complied with the provisions of this article."* It also *made it unlawful for any person to act as agent unless the corporation had made the appointment as therein provided and on conviction such person was subject to a fine and imprisonment in the county jail.* The parts italicized were inserted by the amendment of 1895.

This statute, as written, was applied in *Sioux Remedy Co.* v. *Cope* (1911), 28 S. D. 397, 133 N. W. 683. The decision in that case, however, was reversed in *Sioux Remedy Co.* v. *Cope* (1914), 235 U. S. 197, 35 S. Ct. 57, 59 L. Ed. 193, upon the ground that the provisions were unreasonable and in conflict with the commerce clause of the Federal Constitution. It was held in *Pech Manufacturing Co.* v. *Groves* (1895), 6 S. D. 504, 62 N. W. 109, that an action might be maintained in that state by a foreign corporation to enforce the collection of a debt although it did not appear that such corporation had complied with the statute by filing a copy of its charter in the office of the Secretary of State or appointed a resident agent. The Legislature being then in session, re-enacted the statute with the amendments as indicated, the amendatory act taking effect March 14, 1895.

In *Wright* v. *Lee* (1892), 2 S. D. 597, 51 N. W. 706, it was held that a foreign corporation doing business in that state without having complied with the statute could make an assignment under the insolvency laws, and that the contracts made before such assignment were not void. And in *Reed* v. *Todd, supra,* referring to *Wright* v. *Lee, supra,* the court said: "The effect of the statute upon the acts of such corporations was necessarily involved, and this court, having then concluded that it did not render such acts void, should now adhere to that view, unless the law was changed in this respect by the 1895 amendments. What, then, was the object of such amendments as to contracts, agreements, and transactions made or entered into in this state? Were they

thereafter to be regarded as void and subject to collateral attack? It was not so expressly declared. Nor did the Legislature forbid the commencing and maintaining of actions thereon by any person other than the corporation itself. It should be assumed that the language of Constitutions and statutes is selected with care and deliberation. Why prohibit actions upon void transactions? This is the language: 'Provided, that no action shall be commenced or maintained in any of the courts of this state by such corporation on any contract, agreement or transaction made or entered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article.' The permission to maintain an action on the transactions mentioned as to all other persons is scarcely less clear and explicit than is the prohibition as to the corporation. As to the present controversy, the amendment, by its terms, as plainly permits an action upon the transaction here involved by the plaintiff as it prohibits one thereon by the offended Iowa corporation. As interpreted by this court, failure to comply with the statute, before its amendment, merely subjected the corporation to a proceeding by the state to prevent it from continuing to exercise its franchise within this state. The amendment added these consequences only: Inability of the corporation to sue on any transaction before compliance with the statute, inability of the corporation to sue on any transaction entered into in this state before having complied with the statute, and the liability of the corporation's agents and officers to criminal prosecutions."

It is said that *Farrior* v. *New England, etc.* (1899), 88 Ala. 275, 7 So. 200, 201, supports the contention of appellee in the instant case. Article 14, Section 4, of the Constitution of Alabama, declares: "No foreign corporation shall do any business in this state without having at

least one known place of business, and an authorized agent or agents therein."

It is to be observed that this amounted to a constitutional prohibition against the making of a single contract, or the doing of a single act of business, as well as the carrying on of business generally. It is a prohibition without any penalty, and under the well established rule, where a contract is made against a positive prohibition without a penalty being provided for, such contract is void, although in *Sherwood* v. *Alvis* (1887), 83 Ala. 115, 3 So. 307, 3 Am. St. Rep. 695, it was held that a contract made by a corporation which had not complied with the Constitution was not void. The Alabama Act of February 28, 1887, in express terms made it unlawful for a foreign corporation to engage in business in violation of the constitutional and statutory requirements and provided that the corporation should be fined $1,000 for each offense. But as was said in the Farrior Case in speaking of this act: "The legislative act cannot change the construction or meaning of the constitutional clause under consideration  . . .  but it can neither add to nor take from the legal significance of its meaning which was the same before as after the date of the enactment designed to give vigor to its execution." *Sherwood* v. *Alvis, supra,* was followed in *Craddock* v. *American, etc., Mfg. Co.* (1889), 88 Ala. 281, 7 So. 196.

The statute now in force in Alabama provides that all contracts and agreements made by non-complying foreign corporations "shall be held to be void." Sec. 7208, Civil Code of Alabama.

In Code of Alabama, 1923, on page 391, the annotator (under §232 which corresponds with Article 14, §4 Constitution of 1875), says: "Before the statute imposing a penalty for non-compliance, an executed contract, made by a corporation not complying, was not void; and the other party could not question the contracting capacity

of the corporation." Citing the Sherwood and Craddock Cases. "Since the statute the contract is void, and, if executory, will not be enforced." Citing *Dudley* v. *Collier* (1888), 87 Ala. 431, 6 So. 304, 13 Am. St. Rep. 55; *Collier* v. *Davis* (1891), 94 Ala. 456, 10 So. 86, and the Farrior Case, *supra*.

Section 3649 Alabama Code 1907, provides that "all contracts made in this state by any foreign corporation which has not first complied with the provisions" of the statute shall "at the option of the other party to the contract, be wholly void."

Section 194 of the Constitution of Kentucky provides that: "All corporations formed under the laws of this state, or carrying on business in this state, shall, at all times, have one or more known places of business in this state, and an authorized agent or agents there, upon whom process may be executed, and the general assembly shall enact laws to carry into effect the provisions of this section."

In accordance with the mandate of the Constitution the legislature at the first session after the adoption of the Constitution enacted a statute, which, among other things, provided that "it shall not be lawful for any corporation to carry on any business in this state until it shall have filed in the office of the Secretary of State a statement," etc. It also provided that if any corporation failed to comply with the requirements of the statute, "such corporation, and any agent or employee of such corporation, who shall transact, carry on or conduct any business in this state for it shall be severally guilty of a misdemeanor and fined not less than $100 nor more than $1,000 for each offense." It was first held that all contracts made by a corporation without complying with the statute were void and that the corporation could not maintain an action upon any contract entered into by the non-complying corporation. Those decisions, however,

were overruled in *Williams* v. *Dearborn Truck Co.* (1927), 218 Ky. 271, 291 S. W. 388, where it was held that the failure of a foreign corporation to comply with the statute was not a defense. See also *Hayes* v. *Providence, etc.* (1927), 218 Ky. 128, 290 S. W. 1028, 59 A. L. R. 450, where the court had under consideration the failure to comply with the statute relating to persons doing business under any name other than their own, and where the court reached the same conclusion as our Supreme Court did in the Humphrey Case.

As was said in *Louisville, etc.,* v. *Southern Roads Co.* (1927), 217 Ky. 575, 290 S. W. 320, the statute does not mean that a corporation that has failed to comply with the statute "shall be outlawed forever after."

Section 4918, Burns 1926, among other things, provides that: "If, after this act shall take effect, any foreign corporation shall fail to comply herewith, no suit may be maintained, either at law or in equity, upon any claim, legal or equitable, whether arising out of contract or tort, in any court of this state." This act was approved March 9, 1907, and went into force April 10, 1907. It fixed no time within which a foreign corporation then doing business in the state should comply with its provisions. Such corporations having complied with the former statute had a lawful right to continue in business until the statute took effect. In fact no such corporation could have complied with the Act of 1907, before it became operative. If the statute is to be construed as contended by appellee, a corporation which continued doing business a day or a week after the act became effective would have been subject to the pecuniary penalty as well as being prohibited from maintaining any action in the courts of this state. If such a corporation could continue to do business for a week after the law took effect, without being subjected to the harsh penalty of being barred from bringing an action in the court of

the state, it could continue doing business for a month.

The statute as heretofore stated does not fix a time within which such corporations shall comply with the statute, nor does it provide that it shall be unlawful for such corporation to continue doing business as before, pending the filing of the necessary papers for the purpose of complying with the new statute, nor does it, in express words, prohibit such corporations from continuing to conduct business as before. The statute is highly penal and is not to be given an unreasonable interpretation. If the statute is to be construed strictly against foreign corporations, a corporation doing business in the state when the law went into force would have been compelled to cease doing business until it had complied with the statute. We do not believe it was the intention of the legislature to prevent foreign corporations doing business in this state. Its purpose was to secure a compliance with the provisions of the statute. Appellant did comply with the statute. It was thereafter entitled to maintain actions in the courts of this state. Contracts theretofore entered into were not void, and not being void, appellant, after having qualified, was no longer prohibited from maintaining an action thereon. The courts in some of the states have held that the prohibition against "maintaining" an action does not prohibit the commencement of an action, but that it prevents the further prosecution of such action until there has been a compliance with the statute. Other courts have held that such a prohibition prevents the commencement of an action as well as the further prosecution thereof.

Section 4 of the Act, §4912, Burns 1926, requires that corporations admitted to do business under the Act of 1907 shall constantly keep on file with the Secretary of State an affidavit of the president and secretary thereof, showing the location of its

principal office in this state and the name of the person who may be found at such office for accepting service of process, and that whenever the location of the office or the agent shall be changed, a new affidavit shall be filed. Would the failure to file such an affidavit as to change of location of office or of agent make all contracts entered into during such failure void? Suppose that a corporation had complied with the statute and had thereafter being doing business in this state for years, but during the month of January, 1930, had failed to make a report to the Secretary of State, as required by §4914 of the statute, until the 15th day of February, would this court hold that contracts made by such corporation in February and prior to the filing of such report were void, and that no action could be maintained on them after February 15th, when the report was filed? We think not. How long would such a corporation be prohibited from maintaining an action in our courts? The answer, in our judgment, is until it shall have complied with the provisions of the statute. The penalties for failing to comply with the provisions of §§4913 and 4914, *supra*, are the same as are provided for failure to comply with the provisions of the other sections of the statute.

In *Caesar* v. *Capell* (1897), (C. C. A.), 83 Fed. 403, at page 423, referring to Thompson on Corporations where the author discusses the Indiana decisions, the court said: "It is stated that the Supreme Court of Indiana at first treated the contract as void at the election of the citizen of the state, and that he might even sue to recover the money back, but that the demoralization produced by this sanction of repudiation and spoliation induced that court, upon a reconsideration, to take the position—much commended by the author—that a failure to comply with the regulations of the statute does not make the contract absolutely void, but only operates

to suspend the remedy until such time as the foreign insurance company shall comply with the statute; that until such compliance should take place any suit brought to enforce the contract would be only prematurely brought, and a plea setting up the defense should be, not a plea in bar because of the invalidity of the contract, but only a plea in abatement to dismiss that particular suit. As a result of this position, the compliance of the company with the regulations of the statute subsequently to the making of a contract would, *ipso facto,* vitalize that contract and therefore it could be enforceable between the parties."

*Daniels* v. *Barney* (1864), 22 Ind. 207, was an action for the benefit of an express company to recover upon a bond of an agent. The company was doing business as a common carrier without having complied with the Act of 1855, 1 G. & H. 327, regulating common carriers. This statute, like the Insurance Act of 1865, regulated a business and made it unlawful for anyone to engage in and carry on the business without complying with the statute. The company was engaged in a business which was prohibited except under certain conditions. The acts which the agent was required to perform were, by the express words of the statute, made a misdemeanor, and he was subject to a fine for carrying on the business.

Some confusion seems to have arisen as to whether the failure of a foreign corporation to comply with the statute in question must be pleaded in abatement, or whether it can be set up in bar. The following cases hold the plea must be in abatement and not in bar. *Pittsburgh, etc., R. Co.* v. *German Ins. Co.* (1909), 44 Ind. App. 268, 87 N. E. 995; *North Mercer Nat. Gas Co.* v. *Smith, supra; Elston* v. *Piggott, supra; Phoenix Ins. Co.* v. *Pennsylvania R. Co., supra; Maine Guarantee Co.* v. *Cox, supra; Walter A. Wood, etc., Co.* v. *Caldwell, supra; Swing* v. *Wellington, supra; Singer Mfg.*

*Co.* v. *Effinger* (1881), 79 Ind. 264; *Humphrey* v. *City Nat. Bank, supra.*

The correct rule appears to be stated in *Swing* v. *Toner* (1912), 178 Ind. 102, 96 N. E. 946, where the court, quoting from 1 Chitty, Pleading (16th Am. Ed.) §462, said: "Whenever the subject-matter of the plea or defense is that the plaintiff cannot maintain *any* action *at any time* whether present or future in respect of the supposed cause of action, it may, and usually must be pleaded in *bar;* but matter which merely defeats the *present* proceeding, and does not show that the plaintiff is *forever* concluded, should in general be pleaded in abatement."

If the contract is void, or where the foreign corporation has failed to comply with the statute, and by reason of insolvency, or otherwise, it has reached a state which prevents a compliance with the statute, the facts, with reference to its non-compliance and condition, may be pleaded in bar. *Lowenmyer* v. *National Lumber Co.* (1919), 71 Ind. App. 458, 125 N. E. 67; *Wiestling, Rec.* v. *Warthin, supra.*

In the instant case the plaintiff, after the execution of the contract, but before suit, complied with the statute and when the suit was commenced was authorized to transact business in this state. We hold that the fact that the contract between appellant and Klausman was entered into and the material furnished and the labor performed before a compliance with the statute did not render the contract absolutely void; that the non-compliance by appellant with the provisions of §4909, *supra,* suspended the right of appellant to maintain an action in the courts of this state only until it complied with the statute. *U. S. Construction Co.* v. *Hamilton Nat. Bank, supra,* so far as the same is in conflict with this opinion, is overruled.

Judgment reversed with direction to sustain the demurrer to the plea in abatement.

Nichols, J., dissents and reserves right to file dissenting opinion.

## DISSENTING OPINION.

NICHOLS, J., Dissents.—I challenge the decision of the majority of this court as being contrary to the interests of the state, and of its citizens, as a misinterpretation of the plain words of the statute, as reaching a result that can only be reached by judicial legislation, and as against, not only the better reasoning, but the great weight of authority. It is proper that we should have before us the circumstances and conditions which confront us. Since the decisions in the cases of *U. S. Construction Co.* v. *Hamilton Nat'l Bank* (1920), 73 Ind. App. 149, 126 N. E. 868; *Burroughs* v. *Southern Colonization Co.* (1933), ante 93, and *State ex rel.* v. *Traylor* (1921), 77 Ind. App. 419, 132 N. E. 608, the Secretary of State has issued and published a bulletin on the subject of "Transacting Business in Indiana by Foreign Corporations" based as to the requirements of such corporations upon these authorities. As a result thereof, such corporations, evidently not choosing to risk having their contract declared void, have complied with the law of the state as required by the statute, until now there are about 1,000 corporations so qualified. If these cases are overruled and such corporations understand that, in harmony with the majority opinion herein they can transact business in the state without complying with the statute, until they need to do so to use our courts for litigation, thereby saving the fees which they would otherwise pay to the state, and thereby avoiding the appointment in the state of an agent upon whom summons can be served in the event that they for any reason should become liable to a citizen of the state, either be-

cause of breach of contract or in tort, it can hardly be questioned that the great number of these foreign corporations that have so qualified will cease to comply with the statute. If the law is as declared by the majority opinion, then a foreign corporation can enjoy privileges and benefits that a domestic corporation can not have, simply by violating our statute. It can, until it may have occasion to use our courts, do business free of charge, and if it shall become liable to a citizen, it can withdraw from the state, and the citizen is without remedy.

In the event of such course, which will surely follow, the state will lose the fees which such non-complying corporations would pay for their right to transact business in the state lawfully, and the citizens of the state must suffer should there be a liability against such corporations, because citizens will be unable to bring actions for any such liability accruing to them, for the reason that there will be no person in the state upon whom process can be served.

Let us first, without resorting to any list of authorities as precedents for the conclusion which I reach, examine the sections of the statute here involved, determine the meaning of their plain words, and then when we have reached a conclusion by sound reasoning as to the meaning of such sections, as intended by the legislature, see whether we cannot find authorities to sustain such conclusion. The first section, quoted in the majority opinion, is §1, ch. 176, of the Acts of 1907, p. 286, §§4909-4918, Burns 1926, which provides that "Before any foreign corporation for profit shall be permitted or allowed to transact business or exercise any of its corporate powers in the state of Indiana . . . it shall be required to comply with the provisions of this act and shall be subject to all the regulations prescribed herein, as well as all other regulations, limitations and restric-

tions applying to corporations of like character organized under the laws of the state." The language of the section is plain and unequivocal. Such corporations, until they have complied with the requirements of the statute, can not transact business or exercise any of their corporate powers in Indiana. It necessarily follows that any business transacted by such a corporation and any contracts that are entered into by it before its compliance as aforesaid, are unlawful. The statute, by its plain words, absolutely prohibits a foreign corporation from transacting any business until qualified.

Now let us examine Section 9 of the same act, being §4618, *supra.* This section provides a penalty of not less than $1,000 and not exceeding $10,000 for a violation of the provisions of the act, and then provides in addition to such penalty, "in addition to such penalty, if after this act shall take effect, any foreign corporation shall fail to comply herewith, no suit may be maintained, either at law or in equity, upon any claim, legal or equitable, whether arising out of contract or tort, in any court of this state." This section does not say that any suit shall not be maintained until there is a compliance with the statute, and it cannot be made so to read, except by judicial legislation. The statute clearly forbids the transaction of any business until there is a compliance, makes such business unlawful, forbids any suit on any contract entered into and prescribes a penalty for violation of the statute. What more could it do?

Having reached this conclusion, I can not conceive how anyone can contend that it is not in harmony with sound reasoning and the plain words of the statute, I am now ready to fortify myself in the conclusion which I have reached through what I believe to be sound reasoning, by the authorities which I will hereinafter discuss.

Of course, if the authorities cited in the majority

opinion are erroneous in their construction of the statutes involved, and if such construction is harmful to the state and its citizens, there certainly can be no reason to follow such authorities in the face of reason and justice. There can be no reason for perpetuating an erroneous construction of a statute based upon an erroneous precedent. The rule should be first, the determination, by sound reasoning, of the right principle, and then for the purpose of fortifying such determination, to find authorities to sustain it, and not first the authorities which perchance may be erroneous, and then to determine the principle, right or wrong, based thereon.

The first authority cited in the majority opinion, which we need to discuss, is *Walter A. Wood Co.* v. *Caldwell* (1876), 54 Ind. 270, from which the majority opinion quotes extensively, the court construing the Act of 1852, 1 R. S. 1876, p. 373, concerning foreign corporations, Sections 1, 2, 3, 4, 5, 6, and 7 of which provided for certain things which agents of such corporations were required to do before entering upon the performance of the duties of their agency in this state, and Section 4 of which act provided that such foreign corporations should not enforce in any courts of this state, any contracts made by their agents or persons assuming to act as their agents, before a compliance by such agents, or persons acting as such, with the provisions of Sections 1 and 2 of the act. The court first set out the insurance act of 1865, 1 R. S. 1876, p. 594, Section 1 of which first provided that it should not be lawful for any agent or agents of any insurance company incorporated by any other state than the State of Indiana, directly or indirectly, to take risks or transact any other business of insurance in this state, without first producing a certificate of authority from the auditor of state. There were other requirements and prohibitions in this section to the same effect. Section 7 of the act provided penalties for the

violation of the act. The court, after stating that the statute contained no section or clause thereof; declaring what the effect of non-compliance with its provisions should be upon contracts made before compliance, then held that contracts made in violation of the statute were void, citing *Hoffman* v. *Banks* (1872), 41 Ind. 1; *Union Central Life Ins. Co.* v. *Thomas* (1874), 46 Ind. 44; *Farmers, etc., Ins. Co.* v. *Harrah* (1874), 47 Ind. 236. To the same effect is *Cassady* v. *American Ins. Co.* (1880), 72 Ind. 95.

The Hoffman case held that where a premium note was given for a policy in a foreign corporation, which had not complied with the law, and no certificate had been issued to the agent receiving the note, the note was void. The other two authorities are to a similar effect. If the contracts involved in these cases were void because there had been no compliance with the statute which said that it *shall not be lawful* to transact business without first complying, and those authorities are not overruled, then why are contracts under the act under consideration, which provides that foreign corporations shall not transact business or exercise any of their corporate powers before compliance with the act not void? The court then proceeded to a discussion of the act of 1852, cited above, Section 4 of which, set out above, distinguished it from the insurance act of 1865 construed in such case, as appears above, in that said Section 4 declared what the effect of non-compliance with the 1852 act would be, which was, that the contract could not be enforced before (until) there was a compliance with sections one and two. These two acts, 1852, 1865, were later repealed, and we have in lieu of the 1852 act, the one here to be construed. I submit that the insurance act 1865 was, in effect, so far as here involved, like chapter 176 of the Act of 1907, here under discussion, and if contracts made in violation of the insurance act of 1865, which had no section or clause declaring the effect of non-compliance with its

provisions were held void, then contracts made in violation of chapter 176, here under consideration, section one of which affirmatively declared that before any foreign corporation for profit shall be permitted or allowed to transact business, or exercise any of its corporate powers in the State it shall comply with the provisions of the act and, the act further providing that no suit may be maintained on such contracts, either at law or in equity in any court in this state, then, for the additional reason that no suits may be maintained on such contracts, they are void.

The case of *Walter A. Wood, etc., Co.* v. *Caldwell, supra,* so confidently relied on as an authority controlling the case does not apply to the act of 1907, the present statute but does construe the act of 1852 as well as the act of 1865, which is in effect the same as the act of 1907. The majority opinion cites Indiana cases which it says are to the same effect as the Wood case, but every one of them was decided before the present statute was enacted, and, of course, when the statute of 1852, interpreted in the Wood case, was in force. If I am right in my interpretation of the 1852 statute, it follows that none of these cases is in point under the statute of 1907, now in force. The majority opinion cited *Horning* v. *McGill* (1919), 188 Ind. 332, 116 N. E. 303, which involved the sale of merchandise without filing a proper certificate with the clerk of the court, as required by Acts 1909, p. 358, Burns 1926, §12160. In that case, the court said: "The statute in this state makes it unlawful for any person or persons conducting or transacting business in this state under any name, designation or title other than the real name or names of the persons conducting such business without first filing a certificate stating the firm or partnership, place of business, and the full name and residence of the persons engaged in or transacting such business, with the clerk of the court of the county in which the place or places of business may be situated. Acts 1909, p. 358

§9711, et seq. Burns 1914. The appellant had not complied with the provisions of this law." But that the court wrongly interpreted the statute is apparent from a casual reading of it. In overruling this case, the court, in *Humphrey* v. *City Nat'l Bank* (1921), 190 Ind. 293, on 305, 130 N. E. 237, said: "The statute does not fix any time within which such persons were required to file a certificate, nor provide that it shall be unlawful to continue to conduct business as before, pending the filing of the required certificate, nor that any business shall not be transacted in any name other than the true name of the owner until the certificate is filed, nor does it contain any language purporting to prohibit the conduct of business in the designated manner without first filing a certificate. And obviously the contract for the purchase of a quantity of fish was not, in itself, either immoral or otherwise illegal." See *Piggly Wiggly Stores* v. *Lowenstein* (1925), 197 Ind. 62, 147 N. E. 771, and *Ayres* v. *McNeely* (1921), 75 Ind. App. 327, 130 N. E. 539 for a discussion of the same statute. It seems clearly to be implied that if the statute had contained these prohibitory provisions any contract in violation thereof would have been void.

There is certainly a clear distinction between a statute that does not prohibit the transaction of business before some requirement is performed but simply requires the agent to comply with the requirement, and one that says that the corporation shall not be permitted to transact any business or exercise any of its corporate powers before it has complied with the provisions of the statute. These last provisions are those of the statute which controls the decision of this case.

I may say here, parenthetically, that I am wholly unable to understand why the courts in the discussion of foreign corporation statutes, have classified such corporation contracts into those that are legal or moral, and

those which are illegal and immoral, holding that the latter class are the ones, that under the statute, can not be enforced. Any lawyer or judge knows that immoral and illegal contracts can not be enforced regardless of these statutes, or in any event.

In the Horning case the court was unfortunate in citing *Beecher* v. *Peru Trust Co.* (1911), 49 Ind. App. 184, 97 N. E. 23, and *Sandage* v. *Studebaker, etc., Co.* (1895), 142 Ind. 148, 41 N. E. 380. Each of these cases announces a correct principle of law, but neither of them sustains the court's decision, which, as stated above, was overruled.

The Beecher case pertained to the right to sell or offer for sale commercial stock food without having complied with the Acts of 1907, p. 354, as amended in 1909, Acts 1909, p. 106, being §8825, et seq. Burns 1926.

The first section of the act provides, so far as there and here involved, "That before any concentrated feeding stuff is sold, offered or exposed for sale in Indiana, the manufacturer, importer, dealer, agent or person who causes it to be sold, or offered for sale, by sample or otherwise, within the state, shall file with the state chemist of Indiana, at the Indiana Agricultural Station, Purdue University, a statement that he desires to offer such concentrated feeding stuff for sale in this state," with further provisions. §8830, being §6 of the act, provides a penalty for its violation. It needs hardly to be remarked that the questions there involved were the same as here. The court stated the rule as follows: "The prevailing weight of authority establishes the proposition that where the statute forbids the carrying on of a business without the procuring of a license, the payment of a tax, compliance therewith prescribed tests, inspection, registration or the like, contracts made by persons carrying on such business are void though the statute contains no express provision to that effect.

"If the statute prescribes what shall be done before

the right to do a certain thing, or carrying on a certain business, is granted, and prohibits such business under penalty, the fact that the act is made a misdemeanor implies a prohibition and gives to it the same effect it would have if the statute expressly declared void contracts made in carrying on such business." Numerous authorities are cited that sustain the rule.

In the Sandage case the court stated the rule to be "that there can be no recovery on a contract made in violation of a statute, as between the parties thereto, the violation of which is prohibited by a penalty. This is true although the statute does not in terms, pronounce the contract void nor expressly prohibit the same. This doctrine is well supported by many English and American decisions." Authorities are cited.

In the Woods case, relied upon in the majority opinion as aforesaid, the court stated the common-law rule to be that "at common law, the general rule is that, if the statute forbids the act to be done or provides a penalty for doing it, any contract to do such act is invalid whether the statute declares it to be so or not."

Now, let us read again the statute here under consideration, which is that "before any foreign corporation for profit shall be permitted or allowed to contract business or exercise any of its corporate powers in the State of Indiana . . . it shall be required to comply with the provisions of this act," etc.

The legislature has certainly made a desperate effort to make the law so plain that it would be impossible of misconstruction by the court, for, after the enactments above discussed and which seem so clear to me, in 1913, it again issued its mandate as follows: "That it shall not be lawful for any foreign corporation to transact business in this state until it has filed with the auditor of state a certified copy of a vote or resolution of its board of directors, consenting that service of process in

any action against it may be served upon the auditor of state of Indiana, and agreeing that any process so served shall be of the same legal force and validity as if served upon such corporation, and agreeing that such service may be made with such effect, while any liability remains outstanding against such corporation." It is to be observed that this statute is wholly unburdened by penalties or other environments. It simply provides that "it shall not be lawful," etc. Acts 1913, page 60. With these statutes before us, it is beyond me to understand how the courts can hold that a foreign corporation has any rights in this state until it has complied with them. To do so, as it seems to me, is to usurp legislative prerogative, annul enactments, and, in this case, to permit a foreign corporation that has for years violated our laws, until it had need to use our courts, then to make a pretended qualification, and sue the widow of one of our citizens who, so far. as appears, without compensation, had signed one of its bonds. This I decline to do.

To sustain its contention that a contract in violation of statute is not void, the majority opinion cites *Sandage v. Studebaker, etc., Co., supra,* but that case is not helpful to the contention. In the first place the case does not hold that contracts in violation of a statute are not void, but does hold that although the statute in terms does not pronounce the contract void nor expressly prohibit the same, that there can be no recovery on a contract made in violation thereof as between the parties thereto, the violation of which is prohibited by a penalty, is a principle well recognized by the courts. Clearly, the holding is that, whether the contract is void or not, there can be no recovery thereon, if made in violation of a statute, and in the instant case the contract was made in violation of a statute, and it follows that appellant can not recover. As it seems to me, this was an unfor-

tunate citation with which to sustain the contention of appellant, or of the majority opinion.

I must repeat, by way of emphasis, that I am wholly unable to understand why the kind of contract, if, when there is a compliance with the special statute, it is a lawful contract, should make any difference whether it be for a patent right, or for insurance, or what not. Of course, if it is immoral, against public policy, or for any reason prohibited, it is void without any reference to laws controlling contracts of foreign corporations, and it seems to me that any attempt to apply and limit foreign corporation statutes to such contracts is the merest subterfuge by the courts, for the purpose of avoiding the plain provisions of statutes, and to nullify plain legislation.

The next case cited in support of the *U. S. Construction Co.* v. *Hamilton, supra,* is *U. S. Lead Co.* v. *Reedy, etc., Co.* (1906), 222 Ill. 199, 78 N. E. 567, and we are informed in the majority opinion that this case is not a well considered case, and not in line with the weight of authority. But I do not consider myself bound by this conclusion of the majority opinion, without reason therefor, and I therefore conclude to examine the case. After doing so, I have no hesitation in saying that, not only is it a well considered case, in line with the weight of authority, in concise and plain language, but that it is so squarely against the opinion of the majority that there was nothing else for it to say than to denounce it without reason therefor.

For fear that those reading the majority opinion will be satisfied with the statement that the case is not well considered, I conclude to set it out fully. The statute of Illinois at that time contained the same provisions as to the prohibition of transacting business, a penalty, and no authority to maintain a suit, as the Indiana statute here being considered. The court said: "According

to the averments of this plea, appellant transacted the business in question in this state at a time when it was forbidden by our laws so to do, and it was not permitted by our laws to maintain any suit, either legal or equitable, in any of the courts of this state when this suit was instituted. Appellant's contention is that its right to bring action is not barred by these statutes; that they merely abate this suit, leaving to the foreign corporation the right to maintain its action if it shall hereafter qualify to transact business in this state.

"In the case of *Cincinnati Mutual Health Assurance Co.* v. *Rosenthal*, 55 Ill. 85, 8 Am. Rep. 626, a similar question arose, the foreign corporation there being an insurance company which had brought suit in this state upon a note given to it for stock in the corporation and for premium on a policy of insurance. It appeared that the contract in pursuance of which the note was given was entered into and the note executed and delivered in this state when the plaintiff was not authorized to transact business in this state, for the reason that it had not complied with the laws of the state in reference to foreign insurance companies. Its lack of authority to conduct its affairs in this state was interposed in bar of the action, and the court, after pointing out that the statute expressly prohibited such a company from effecting insurance or transacting business in this state until after it should have complied with the statute in reference thereto, used this language: 'When the Legislature prohibits an act or declares that it shall be unlawful to perform it, every rule of interpretation must say that the Legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void.' This case has been cited with approval on a similar proposition in *Penn* v. *Bornman*, 102 Ill. 523, and *Illinois State*

*Trust Co.* v. *St. Louis, Iron Mountain & Southern Railway Co.*, 208 Ill. 419, 70 N. E. 357.

"The contract upon which this suit was brought, having been entered into in this state when appellant was not permitted to transact business in this state, is in violation of the plain provision of the statute, and is therefore null and void, and no action can be maintained thereon at any time, even if the corporation should at some time after the making of the contract qualify itself to transact business in this state by a compliance with our laws in reference to foreign corporations that desire to engage in business here."

As if to sustain and confirm the statement that the foregoing case is not a well considered case, *Bradford* v. *Indiana, etc., Co.* (1927), 16 Fed. (2d) 836, is cited. But that case, though involving an Illinois statute, did not involve the same statute as considered in the U. S. Lead Co. case, which was afterward repealed, and the latter statute did not contain the provisions that were decisive of the U. S. Lead Co. case. The Bradford case is not in any sense an authority in this case, for we are here trying to determine whether a statute that says "thou shalt not" means what it says.

The majority opinion quotes to sustain its contention from *Welbourn* v. *Kimberling* (1909), 44 Ind. App. 455, 89 N. E. 514, as follows: "Were this an action, by a corporation as a going concern, and the question was properly presented, there would be no doubt under the decided cases in this state that to enforce the payment of assessments for which suit it brought would be suspended until a compliance with our statutory requirements. That the learned judge who wrote the opinion, and who usually thinks and reasons so clearly, failed to distinguish between the 1852 statute and the 1865 statute, is manifest in that he has failed, in the cases cited to sustain the statement, to distinguish between those which were

based on the one statute or the other. The distinction is clearly made in the case of *Wood* v. *Caldwell, supra.* The same failure to distinguish is manifest in the cases cited in the majority opinion. Of the eleven cases cited, seven have no reference to insurance, or to the insurance statute of 1865, then in force, but are clearly under the statute of 1852. Let us get away from this maze of contradictory and inconsistent decisions, and, independently of all of them, read the statute, which is as follows: "It shall not be lawful for any agent or agents of any insurance company incorporated by any other state than the State of Indiana, directly or indirectly, to take risks, or transact any business of insurance in this state, without first producing the certificate from the auditor of state," etc. If not lawful, it is unlawful, and if unlawful, it is illegal, it is void, and the Wood case, construing the 1865 act, so holds, and clearly distinguishes this statute from the 1852 statute. The courts have performed their whole duty when they have construed a statute according to its plain meaning, and, without judicial legislation, leaving that duty and right wholly to the department of state created for that purpose.

In *Phoenix Ins. Co.* v. *Pennsylvania Railroad Co.* (1899), 134 Ind. 215, 33 N. E. 970, the court recognizes that there is one line of decisions which holds that the contract entered into by a citizen of the state with a foreign corporation which has not complied with the statute, by means of which the citizen has bound himself to the corporation, is void, while another line of decisions holds that such contract is not void, but that the right to enforce it is suspended until the corporation has complied with the statute. That case was one where the insurance company was trying to take advantage of its own failure to comply, and the court said: "The doctrine that a foreign insurance company which has insured the property of a citi-

zen for an agreed compensation may, in case of loss, avoid payment on the ground that it has wrongfully omitted to comply with our statute upon the subject of foreign insurance companies is so much at variance with all our preconceived notions of justice that we would not feel inclined to follow it, unless compelled by authority to do so. We think the decided weight of authority is against such a doctrine."

There are numerous courts, and, for that matter, statutes that have declared this rule.

I shall now, for the purpose of giving a reason for the faith that is in me, and for the purpose of showing that I am not alone in the conclusion I have reached in this case, cite and state the holdings from divers cases in other states.

In *Lasher* v. *Stimson* (1892), 145 Pa. St. 30, 23 Atl. 552, the court, speaking of the terms of the statute, said: "These terms are not onerous, or in conflict with any constitutional rule or rule of public policy. But they are clearly prohibitory, and they indelibly stamp as unlawful any business transaction within the state by a foreign corporation which has not complied with them. It is only by its observance of them that it can have a legal existence for business purposes within this jurisdiction, or acquire contractual rights which our courts will recognize." To the same effect see *Thorne* v. *Travellers* (1875), 80 Pa. St. 15, where the court said: "The purpose of the act is to bring foreign corporations doing business in this state within the reach of legal process. This purpose is not accomplished by a registration of the corporation at the pleasure of its officers or when it may be to their interest to appeal to our courts. The act is for the protection of those with whom it does business, or to whom it may incur liability by its wrongful acts, and nothing short of a registration before the contract that it seeks to enforce, is made, can give it a right of action.

Any other construction of the act would violate its plain words, and wholly defeat its object by affording protection to the corporation and denying it to the public." This statement of the court has a direct application to the instant case, for can anyone say that by the plain words of our statute foreign corporations are authorized to transact business in the state before they have complied with the statute? The answer must be that they are not so authorized.

In *McCanna & Fraser Co.* v. *Citizens, etc., Co.* (1896), 74 Fed. 597, it was held that where a foreign corporation has not complied with the provisions of the Pennsylvania statute making registration in the office of the commonwealth a condition precedent to transacting business in that state, there can be no recovery in a suit upon a bond conditioned for the faithful performance of the duty of an agent appointed by it to transact business in that state.

In *Pittsburgh Construction Co.* v. *West Side, etc., Co.* (1907), 154 Fed. 929, the court construing the statute of Pennsylvania, stated that the act in question did not in terms declare the contract void but that it did declare that no foreign corporation should do business in the commonwealth until it had complied with certain requirements, and that the violation of such provisions was a misdemeanor punishable by a fine and imprisonment. The court then asked the question, do these provisions of the act render void all contracts made by foreign corporations without having first registered as required? It then answered by saying "The weight of authority is to the effect that it is not absolutely necessary, to make such contracts void, that the legislature should, in express terms, declare them so. The rule in this regard has been clearly and aptly stated by Lord Chief Justice Holt in *Bartlett* v. *Vinor*, Carth. (Eng.), 252, as follows: 'Every contract made for or about any matter or thing

which is prohibited and made unlawful by any statute is a void contract, though the statute itself does not mention that it shall be so but only inflicts a penalty on the officer because a penalty implies a prohibition, though there are no prohibitory words in the statute.' The rule thus stated has been generally followed by the courts and especially by the Supreme Court of Pennsylvania."

In *Booth* v. *Weigand* (1904), 28 Utah 372, 79 Pac. 570, the court after stating that Section 9 of Article 12 of the Constitution of that state prohibits corporations from doing business in the state without complying with certain requirements which I do not need to set out, and that Section 26 of said article declares all provisions of the Constitution both mandatory and prohibitory when there are no express words declaring them to be otherwise, then holds the contracts of a foreign corporation made while doing business in the state, without having complied with the laws of the state respecting such corporations, are invalid, and cannot be enforced in the courts of the state. This case, on petition for rehearing, was overruled as reported in 30 Utah, and as a striking example of the limits to which courts will sometimes go to accomplish results regardless of constitutional and statutory provisions, you are referred to Utah's Constitution and statute. I can see but little use for a legislature in that state.

The Missouri statute (R. S. 9790) provides that before foreign corporations shall be permitted or allowed to transact business in the state, or continue to transact business therein, if already established, it shall comply with the provisions of the statute.

In the case of *Tri-State Amusement Co.* v. *Forest Park Highlands, etc., Co.* (1905), 192 Mo. 404, 90 S. W. 1020, it was held that a contract entered into by a foreign corporation within the state before complying with the statute forbidding it to transact business in the state without

establishing a local office, an agent to receive service of process, and paying taxes, is void; and subsequent compliance with the terms of the statute will not enable the corporation to maintain an action on the contrtact, although the statute provided a penalty for failure to comply with it, and declares that no corporation failing to do so "can maintain any suit or action" in any of the courts of the state. The court further states that the argument was made that the statute was not intended to affect the validity of the contract, but only the remedy for the enforcement thereof; but the court refused so to construe the statute, and held that it struck at both the validity of the contract and the remedy for the enforcement thereof.

In *American Copying Co.* v. *Eureka Bazaar* (1906), 20 S. D. 526, 108 N. W. 15, it was held that compliance by a foreign corporation with the laws of the state after securing a contract and commencing to enforce it will not enable it to maintain the action, where the statute provides that no action shall be commenced or maintained in the state courts, by such corporation on any contract made by it in the state, unless it shall have fully complied with the provisions of the statute.

In *Farrior* v. *New England, etc., Co.* (1889), 88 Ala. 275, 7 So. 200, it was held that the single act of loaning one money and taking a mortgage to secure it, in Alabama, by a foreign corporation engaged in the business of loaning money on mortgages, when it has no place of business or agent within the state, is a violation of the Constitution of Alabama providing that no foreign corporation shall do any business in the state without having at least one place of business and an authorized agent therein, and that the promise of the mortgager is void, and a bill to foreclose the mortgage can not be maintained.

There are numerous other cases to the same effect as

the foregoing, but I deem it unnecessary to review them for the purposes of this opinion. It is apparent from a careful consideration of all the cases considered in this opinion and in the majority opinion that what appears to be a contradiction in the decisions of the various courts of the United States is not such a fact except in a very few instances, but that the seeming contradictions are generally the result of the variations in the wording of the statutes of the various states, of a failure of the courts to make distinctions that the plain language of the statutes make, and that where the statute of the state is like the present statute of Indiana, any contract made by foreign corporations in such states are held to be void and unenforceable, while in the states where the statutes are like the one of 1852, as re-enacted in 1907, and reviewed in the majority opinion and upon which the result therein was reached, contracts executed in such states are not held void and are enforceable upon a compliance with the statutes.

Let me say again, and finally, that the distinction between the two classes of statutes is clearly pointed out in the *Walter Wood, etc., Co.* v. *Caldwell* (1876), 54 Ind. 272, relied upon in majority opinion and considered herein.

The statute of Indiana in force in 1865, being 1 Garvin & Hord's Statutes, 327, provided for certain requirements of express companies desiring to transact business in the state, and then provided that until such requirements were complied with it should not be lawful for such company to transact the business of transporting packages or parcels of bank notes, coins, merchandise or other articles over and upon any of the railroads in the state, receiving or agreeing to receive compensation for such services. The statute also provided that anyone violating the act should be guilty of a misdemeanor, and upon conviction fined not less than $10 nor more than

$100. This statute was in force in 1864, at the time that *Daniels* v. *Barney* and *Daniels* v. *Wells* (1864), consolidated and reported in 22 Ind. 207, were decided; and it was there held that an action could not be maintained against the principal and surety upon a bond given by an express agent to secure the faithful discharge of his duties to an express company which carried on its business in the State of Indiana, without compliance with the requirements of the law of March 5, 1855 (1 G. & H., 327) because under the provisions of that law the business of such company, so carried on, was illegal. It was further held that the parties to such bond were bound to know the law, should be presumed·to know that the requirements of the law had not been complied with by the company, which requirements were necessary to render the business legal.

In *Aspinwall* v. *Ohio, etc., Co.* (1863), 20 Ind. 492, appellee company was incorporated to do business by the legislature of Indiana. It received subscriptions to its capital stock payable in installments as the company might determine and then migrated to Ohio and there established its office and performed all its corporate acts, and determined in what installments and at what times such subscriptions should be paid, and required them to be paid at its office in Ohio. It was held that such subscriptions could not be collected because such corporate acts were inoperative and void, the corporation having no legal existence in the State of Ohio.

The following cases affirmed the principle that contracts which contravene the provisions of a statute are void: *State Bank* v. *Coquillard* (1855), 6 Ind. 232; *State, etc. v. State Bank et al.* (1854), 5 Ind. 353; *Case* v. *Johnson* (1863), 91 Ind. 477; *Siter* v. *Sheets* (1855), 7 Ind. 131, 134; *Neglebaugh* v. *Harder, etc., Co.* (1899), 21 Ind. App. 551, 51 N. E. 427; 9 Am. & Eng. Encycl. of Law 909.

It is my opinion that the majority opinion is against the plain words of the statute, that it is contrary to sound reasoning and the great weight of authority, that a wrong result is reached, and one that will work damage to the state and injury to its citizens, that *U. S. Construction Co.* v. *Hamilton National Bank* should not be overruled, and that the judgment of the trial court should be affirmed.